# Lacey, *et al. v.* Southern Min. L. Co.

### *Bill to Quiet Title.*

(Decided June 13, 1912.   Rehearing denied December 17, 1912.
60 South. 283.)

*Bankruptcy; Sale; Right Under Deed of Assignee.*—After forty-three years from the adjudication of bankruptcy and thirty-nine years from the bankrupt's discharge, he having by verified petition stated that he had surrendered all his property, it may be presumed that lands of the bankrupt were assigned to his assignee, and that there was an order of sale, although there is no proof of actual possession of the land since the institution of the bankruptcy proceedings, and no direct evidence of the assignment or order, except from the recitals thereof in the assignee's deed, purporting to have followed from a sale by him in the course of the bankruptcy proceedings, and the possible inference of approval by the court of the sale, from a docket entry showing that the officers certified the fees paid, when there was no source other than the sale from which the sum so paid as fees could have been derived, if the exemptions claimed be excepted.

Mayfield and Sayre, JJ., dissent.

APPEAL from Shelby Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Southern Mineral Land Company against E. P. Lacey, and others, to determine and quiet title. Decree for complainants and respondents appeal. Affirmed.

B. C. JONES, for appellants.   There is but one question presenting any difficulty in this case and that is whether or not the court will presume that the special assignment was executed because of the long lapse of time, for certainly the records in the bankruptcy proceedings do not show a sufficient compliance with section 14 of the bankrupt act of 1867.—Bump on Bankruptcy, sections 335, 434 and 427; 3 Bankruptcy Reports, 177; 6 Bankruptcy Reports, 145; 89 U. S., 262; 16

A. & E. Enc'y of Law, 741; 5 Cyc. 342. The deed offered
was not competent as evidence as the assignment was not
produced.—12 N. W., 194; *Robinson v. Denny,* 57 Ala.
492; *Clements v. Taylor,* 65 Ala. 264; *Gayle v. Randle,*
71 Ala. 471; 104 U. S. 230. The deed purports to have
been executed by virtue of the power of an order of
court and before the deed can be upheld the order for
the sale of the land must be shown together with the
report and confirmation of such sale.—*Johnson v. Har-
per,* 107 Ala. 709; *McEachin v. Warren,* 92 Ala. 554;
*Farley et al. v. Whitehead,* 63 Ala. 295. Orders of
court cannot be shown by parol.—*Phillips v. Costley,*
40 Ala. 490; 10 Ecn'y of Evi. 843. Where a person has
been in adverse possession of land claiming title thereto
for a long period the execution of a deed to him will be
presumed.—90 Ala. 314; 157 Ala. 73; Jones on Evid.,
sections 74-79.

THETFORD & MCKENZIE, for appellee. Title passed
from Lacey to Mardis as assignee, and from the facts
shown this court will presume the execution and deliv-
ery to the assignee of a proper assignment.—*Hale v.
Christy,* 24 Neb., 742. The decision in that case was not
dictum.—103 U. S. 143; *Brown v. Finley,* 157 Ala. 424;
3 Words & Phrases, 2F051. It affirmatively appears
from the assessment made by Lacey after the execution
of the deed from him as assignee that Lacey was not
claiming any of the land scheduled by him other than
the lands which were exempt to him.—*Anniston City
Land Co. v. Edmundson,* 141 Ala. 366. If in 1871 Lacey
was acquiescing in the claim of Nabors, and there was
nothing to indicate any change in this condition up to
the year 1910, this court will presume that this condi-
tion of acquiescing continued.—*Hollingsworth v. Wal-
ker,* 98 Ala. 546; *Alabama S. L. Co. v. Matthews,* 53

South. 174; *Butt v. McAlpine,* 52 South. 420. Under all the facts shown it is reasonable to assume that the officers did their duty, they being presumed to have done so unless it appears that they did not.—*McArthur v. Carrie,* 32 Ala. 75; *Matthews v. McDade,* 72 Ala. 377; 54 S. W., 848. Where one party owns a life estate and the other party owns the remainder the possession of a third party will not constitute adverse possession against the remainderman even if hostile to the life estate.—*Pendley v. Madison,* 83 Ala. 484; *Bowling v. Hogan,* 143 Ala. 652.

McCLELLAN, J.—On November 16, 1867, James P. Lacey filed his petition to be adjudged a bankrupt, exhibiting therein schedules of his assets and liabilities. He was on December 7, 1867, adjudged a bankrupt. An assignee, N. B. Mardis, was duly appointed and qualified. Upon Lacey's petition and after his final examination, he was discharged on December 7, 1871. On August 26, 1869, the assignee, as such, executed to French Nabors a deed to certain lands belonging to the bankrupt estate. This conveyance purports to have followed from a sale by the assignee in the course of the bankruptcy proceeding, and recites that Nabors was the highest and best bidder thereat. In this conveyance there are a number of recitals, among which are (a) that the property of the bankrupt was theretofore assigned by the register to the assignee; (b) and that an order of sale of the property had been made by the register. In addition the conveyance contains these words: "Now, therefore, under and by virtue of the said order of sale and the power given to the said party of the first part (i. e., assignee), by law as well as in consideration" of a sum stated, the receipt whereof is acknowledged. The docket entries and papers in the

bankruptcy proceedings are shown in this record. In these certified copies from those proceedings no express reference is made, either to a sale of the bankrupt estate, or to an assignment of the property thereof to the assignee. Aside from the recital in the conveyance that an assignment was made to the assignee and the possible interference of approval by the court of the sale (purporting to have been made May 24, 1869) from the docket entry showing, as of August 20, 1869, that the register and assignee certify fees paid, $163, there is no direct evidence of an assignment to the assignee or an order of sale of the bankrupt estate. The original bill was filed April 7, 1910. The answer and cross-bill of the appellants was filed April 22, 1910.

There was no proof of actual possession by any one since the institution of the bankruptcy proceedings in 1867. So the reliance to sustain the allegation in the original and cross bills, respectively, of possession of the property, must be the ascertainment of the repository of the legal title, which, under the familiar rule applicable where there is no actual possession opposed thereto, draws to itself constructive possession. It does not appear from the evidence that appellants or James P. Lacey ever asserted any claim to the lands in question until about the time this litigation was commenced. It does appear that Mardis, the assignee, and James P. Lacey had been dead more than 15 years before June 28, 1910. Lacey, the owner of these lands, invoked the jurisdiction of the bankruptcy court in 1867. In orderly progress Mardis was duly constituted the assignee in that proceeding. An essential step in the administration of the trust for the benefit of the creditors of the debtor was an assignment by the judge or register of the property of the bankrupt to the assignee.—*Conner v. Long,* 104 U. S. 228, 230, 26 L. Ed. 723. In 1869 a sale

and conveyance reciting an assignment to the assignee by the register was had; the purchase price bid by the grantee therein being $163.10. On August 20, 1869, fees, in practically that sum, appear to have been paid by the register and assignee. If the exemption of personal property claimed is excepted, there was no other source than the sale of May 24, 1869, from which the sum so paid in fees could have been derived. December 7, 1871, the bankrupt was discharged. In his verified, by him, petition for final discharge, it is recited "that he has duly surrendered all his property and rights of property." About 43 years have elapsed between the adjudication of Lacey's bankruptcy and the filing of the bills in this cause. Practically 39 years so intervened between his discharge and the institution of this cause.

Under the circumstances stated, there should be no hesitancy in finding as of fact, and of presuming from the circumstances shown that in the progress of the bankruptcy proceedings, eventuating in the bankrupt's discharge, all necessary steps were taken to administer the trust, and to effectuate the purpose of the laws under which Lacey voluntarily sought and secured his discharge from his scheduled liabilities. That the finding made and the presumption indulged conform to the truth is rendered practically certain by the fact that Lacey himself never subsequently asserted, or sought to assert, any right to these lands. To impute to Lacey any other relation to these lands than that the stated finding and presumption take as true would unwarrantably refute, in the interest of his heirs, who could occupy, in this particular respect, no higher right or relation to these lands than Lacey, his verified declaration upon which he sought and secured his discharge in bankruptcy. These proceedings, as shown by the papers therein, have passed, because of the elapsing of so many

years, into the category of the ancient. Of such matters it was said in *Baucum v. George,* 65 Ala. 259, 206: "When a record, or an office paper, is lost or destroyed, if its former existence is satisfactorily shown, secondary evidence of its contents will be received. Sometimes existence and contents may be presumed, if the record is ancient; but in all cases it is, like other documents, the subject of secondary evidence of the highest grade the party can produce.", The assignee and the bankrupt, and probably all others immediately concerned in the bankruptcy proceedings, are dead. The papers therein were not recorded. It would seem difficult, if not impossible, to adduce a higher character of evidence of the fact of assignment and order of sale than the recitals found in the deed from the assignee to Nabors.

It is insisted for appellants that the presumption of a grant of real estate, after the elapsing of a great period of time, has not been indulged except to support and confirm an actual possession. If that be accepted as the unvarying rule, our conclusion, as before expressed, does not conflict therewith. The finding upon fact and the presumption therefrom in respect of steps in a proceeding taking place in the remote past in a tribunal fully jurisdictioned to act and which did pronounce according to the ultimate object of the proceeding distinguished the matter at bar from a status to which appellants' contention refers.

The decree is therefore affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, and SOMERVILLE, JJ., concur. SAYRE, J., dissents.

MAYFIELD, J.— (dissenting.)—I am of the opinion that the decree is for the wrong party. Appellants and

appellee claim title from a common source, James P. Lacey. Appellants claim as heirs, and appellee claims as purchaser through a bankrupt sale.

It is admitted that the records of the bankrupt court show no assignment of the land in question to the assignee by the bankruptcy court. Without such assignment it is admitted that no title could pass. The recital of such assignment in the assignee's deed is not sufficient. An agent or trustee cannot bind his principal or cestui que trust by recitals in conveyances of the trust property that he is authorized to convey. If this be true, a trustee or assignee can always confer authority on himself to make any property trust property, and then authorize himself to sell and convey it. The trustee or assignee is the creature of the trust, and not the creator of it or of his own authority to convey it. The purchaser has never been in possession, so no rule of prescription can apply, such as to authorize the court to presume against the record that the bankrupt court assigned the land in question to the assignee.

The appellee in this case is in my judgment in very little better position than if there had been no bankruptcy proceedings, and it claimed under an assignee's deed, which recited that James P. Lacey had conveyed to the assignee. If there had never been any possssion under such deed, surely the court would not hold that it would be presumed that Lacey had conveyed to the assignee, for the reason that the deed so recited. Lacey, the common source of title, being in possession, and there being no evidence of a change of possession, I think the only presumption which should be indulged in this case is that Lacey's heirs have been in possession of this land since his death, and therefore have the title. I cannot understand how a presumption can be indulged to thus defeat the heirs, when it is conceded that the

records and the evidence fail to show that the title ever passed out of the ancestor except by an unauthorized presumption. If the title never passed out of Lacey, it is not claimed that it has ever passed out of his heirs, because it is not claimed that they ever conveyed or that there has ever been any adverse possession as against them. The title could not be in abeyance or in nubibus, and must have been in the heirs.

Is it not more reasonable to presume that the record speaks the truth, and that the purchaser did not go into possession, or assert or claim title, because he had none, than to presume that the record is imperfect, and that the purchaser was guilty of laches of the grossest kind for 40 years, and thereby acquired title by his own laches?